Frank A. NIRO, Jr., Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

Edward M. GLYNN, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 6934, 6954.

United States Court of Appeals First Circuit.

Feb. 2, 1968.

Murray H. Falk, by appointment of the Court, with whom Moulton, Looney, Mazzone & Falk, Boston, Mass., was on brief, for appellant Frank A. Niro, Jr.

Chester C. Paris, Wakefield, Mass., with whom Joseph J. Balliro, Boston, Mass., was on brief, for appellant Edward M. Glynn.

Herbert N. Goodwin, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Defendants, Niro and Glynn, appeal from convictions under 18 U.S.C. § 659 for knowing possession of stolen goods that had been transported in interstate commerce. Their primary contention is that the district court erred in denying motions to suppress evidence (hereinafter referred to in the singular).

During the evening of September 19, 1966, agents of the FBI commenced surveillance of a garage in Franklin, Massachusetts. The building, roughly 200 feet long and 50 feet wide, originally a carbarn and then a shop or garage, was owned by one Wise. Wise had discontinued active operation and in April 1966 leased the back 50 feet to Niro. Wise at all material times ·employed a part-time caretaker, Ford, who had a key, and whose duties, to Niro's knowledge included periodic inspection of the entire interior of the building. In May, Ford observed Niro and others, accompanied by a man subsequently identified as Glynn, erect a partition which, when the sliding door was closed, separated the Niro portion from the rest of the building. The Niro portion had a separate entrance.

When the FBI commenced the surveillance they had probable cause to believe the following facts. On September 13, a tractor trailer, description fully known, loaded with vodka and gin was hijacked in Madison, Connecticut. Through a known reliable informant,[1] the hijackers were reported to be Glynn and one Pineau. On September 16, a tractor trailer, description known, loaded with whiskey was hijacked by three men in West Warwick, Rhode Island. The evening of September 19, Ford reported to the local police, and then to the FBI, that both tractor trailers and a quantity of whiskey were in Niro's portion of the garage, and identified a picture of Glynn. The surveillance then began.

Near noon on September 20, two cars believed to be used by Niro and Glynn were seen to enter the rear of the building. At this point the FBI force was increased to twelve men, in three or four cars. A group of three, using a key supplied by Ford, entered the front door. Niro, who had heard the cars and had run to the front portion to see what was happening, was arrested by the door. Glynn, and others not presently involved, were arrested immediately thereafter. The evidence, due to the absence of a chart used at the trial, is not clear, but apparently Glynn, too, was in Wise's retained portion of the premises. One of the tractor trailers protruded through the open doorway in the partition. Through this doorway cartons of whiskey could be seen. Having secured all the occupants, the FBI moved into Niro's portion of the building, where they found, also, the vodka and gin. They thereupon seized the liquor and the tractor trailers.

---

[1]. He was described in an affidavit filed subsequent to the arrest as an "informant of known reliability, who has in the past furnished reliable information."

Prior to trial defendants sought to suppress the evidence seized at the garage. The testimony taken revealed the foregoing facts. It further revealed that no warrant for the arrest of any person, or for a search of any kind, had been issued or, so far as appeared, had been sought, at the time of the entry and arrests. The court denied the motion without opinion.

■ In seeking to support this ruling the government makes a number of contentions. The first is that the defendants lacked standing to object. This contention is based upon an unsound reading of Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In *Jones* the defendant sought to suppress a quantity of narcotics seized under an allegedly invalid warrant. The lower courts held that because the defendant failed to establish that he was more than a licensee in the premises or that he was in possession of the narcotics, had no standing to press the motion. A unanimous court reversed on both grounds. The Court rejected the notion that protection of the constitutional right against unreasonable searches and seizures should turn on subtle distinctions borrowed from the law of private property, and concluded, "[A]nyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." 362 U.S. at 267, 80 S.Ct. at 734. The Court further stated that where the "basis" of the charge was possession the government could not simultaneously resist the motion to suppress on the ground that the defendant's possession was lacking. In no uncertain terms it condemned "such squarely contradictory assertions of power by the Government." 362 U.S. at 264, 80 S.Ct. at 732.

It would be possible to construe the Court's phrase "possession on the basis of which petitioner is to be * * * convicted * * *" in Jones, 362 U.S. at 264, 80 S.Ct. at 732 as no broader than the decision; viz., as limited to where, as in the case of contraband, possession is the sole basis of the offense. And, in fact, in United States v. Konigsberg, 3 Cir., 1964, 336 F.2d 844, cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344, a case strikingly like the case at bar, the court, as an alternative ground of decision in denying defendants' standing to press the motion, so distinguished *Jones,* stating that where possession was only one element of the offense defendants must establish it. With due respect, we do not think that the principle established by *Jones* is to be read so narrowly. It is still "squarely contradictory" for the government to charge out of one side of its mouth that the defendant had possession, even though in addition to possession the government must ultimately prove other matters, and to say out of the other that the defendant, as movant, lacked standing because he did not have possession. The defendant still faces the "dilemma," to employ the Court's characterization, of having to assist the prosecution in its ultimate proof by self-incrimination in the very case, whether possession constitutes the offense, or only part of it.[2] The government would still "have the advantage of contradictory positions as a basis for conviction." 362 U.S. at 263, 80 S.Ct. at 732.

If, in addition to possession, *Jones* requires that defendant, or defendant's goods, be legitimately on the premises, which we do not intimate, there can be no question on that score. Niro was a tenant, and Glynn a guest.[3] The de-

---

**2.** That this analogizing of the Fifth Amendment is not fanciful is evidenced by United States v. Garrett, 7 Cir., 1966, 371 F.2d 296, cert. granted sub nom. Simmons v. United States, 388 U.S. 906, 87 S.Ct. 2108, 18 L.Ed.2d 1345, where the government was allowed to introduce

defendant's pretrial motion testimony at the trial as an admission.

**3.** Even as to Wise's retained portion, where some of the liquor still in the truck assertedly was, the fact that the partition was built with a door large enough to permit trucks to extend into

fendants' standing was adequately established.

■■ Next, the government contends that the seizure was lawful. First it says that Ford's authority was sufficient to allow the agents to enter the building. On the assumption that the entry was not inimical to Wise we may accept, for present purposes, the government's position as to entry on Wise's retained portion. This could not apply to Niro's portion where the liquor was stored. Stoner v. State of California, 1964, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, Chapman v. United States, 1961, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828. It is, of course, true, as the government says, that the agents were free to observe from Wise's side what was in plain view on the other. United States v. Lee, 1927, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202; Fagundes v. United States, 1 Cir., 1965, 340 F.2d 673; Ellison v. United States, 1953, 93 U.S.App. D.C. 1, 206 F.2d 476. It does not follow that their observation made the agents free to make a seizure on premises to which they were not lawfully admitted. For this they needed something else.

The government contends that the additional element necessary was present and that the entry on Niro's portion was justified as an incident of the lawful arrest of Niro and Glynn. In support it says, "[I]t is apparent that probable cause existed for the arrests." With this statement we quite concur. However, there is a further difficulty. We cannot accept the government's contention that this was not a case "where there was clear evidence of probable cause to make the arrests [substantially] prior to the time they were made." Quite to the

contrary, the arresting officer testified as follows.

Q. "Now, you had had all of the information that was available to you with regard to this arrest, and with regard to this search and seizure, on the evening of September 19th had you not?"

A. "Yes, sir."

No contradiction is to be found. Either the officers had had probable cause to make the arrests for over twelve hours (which we believe they did) or they never had it.

In the light of the unexplained neglect to obtain a warrant, this case fits squarely within Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L. Ed. 1663. There government agents learned, over a period of time, of the operation of an illicit still. After a lengthy surveillance they descended upon the premises, arrested one Antoniole, who could be seen from outside actively operating the still, and on the basis of the arrest searched the premises and seized the contents. Although they had long had sufficient knowledge and opportunity to seek warrants for arrest and seizure, the officers had sought none. A divided court, although viewing the arrest of Antoniole while engaged in committing a felony as lawful, held that the failure to obtain a search warrant when there had been full opportunity to have done so, invalidated what would otherwise have been a search justified by the arrest. Shortly thereafter the court reached a similar result in McDonald v. United States, 1948, 335 U.S. 451, 69 S. Ct. 191, 93 L.Ed. 153, for which it relied upon Trupiano and an earlier case.[4]

Wise's part, the nature of Wise's use, or, rather nonuse of that part, and the failure of Ford, whose broad authority the government vouches for in another connection, to object over a period of time, would seem to show at least an unrevoked license to enter Wise's portion of the building.

4. The facts in McDonald may be briefly stated. There, government officers, trespassing on the landlord's premises, looked

over a transom into the room of the defendant, who was a tenant. Seeing the defendant apparently engaged in illegal gambling operations, they entered and arrested him, and then seized the gambling instrumentalities, which were in plain view. Finding that the officers had long had probable cause to obtain a warrant, and concluding that they had failed to do so merely to avoid the inconvenience, the Court ordered the evidence suppressed. If it felt that McDonald was a different

Two years later the Court decided United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. In that case a court of appeals had condemned a search on the ground of neglected opportunity to obtain a warrant. A divided court reversed. The test, it said, was the reasonableness of the search viewed "under all the circumstances." The Court stated,

> "To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant *solely* upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case." 339 U.S. at 66, 70 S.Ct. at 435. (Emphasis ours.)

While the Court said that the "practicability of procuring a search warrant" was no longer determinative, and that to that extent *Trupiano* was overruled, it did not say that such omission was not a circumstance to be considered. Although it itemized the particular circumstances it found relevant, it did so only in the context of determining whether there was probable cause, not to explain the departure from *Trupiano*. Unfortunately, it failed to provide any standard for determining what was overall reasonableness. After nearly twenty years, the lower courts still lack illumina-

tion. For a recent discussion see The Supreme Court, 1966 Term, 81 Harv.L. Rev. 69, 117–121 (1967).

The present case does not fit *Rabinowitz*.[5] It substantially fits *Trupiano*. Accordingly, the question comes whether *Trupiano* stands today entirely abandoned. While we cannot speak with certainty, we think it does not.[6] We find it noteworthy that the Court, while not mentioning *Trupiano*, continues to cite the similar case of McDonald v. United States, with approval. See Katz v. United States, (12/18/67) 389 U.S. 347, n. 19, 88 S.Ct. 507, 19 L.Ed.2d 576; Camara v. Municipal Court, 1967, 387 U.S. 523, 529, 87 S.Ct. 1727, 18 L.Ed.2d 930. The Court continues to stress the desirability of obtaining a search warrant when it is reasonably practicable to do so. See, e. g., Katz v. United States, supra. If no penalty will ever attach to a failure to seek a warrant, as distinguished from the officers making their own, correct, determination of probable cause, warrants will never be sought, at least when the search is expected to be accompanied by an arrest.

We think it proper to say that while the failure to obtain a warrant when one could readily have been had is not of necessity fatal to a search or seizure concomitant with an arrest the nature of which had been fully anticipated, it will be fatal unless there are at least some countervailing factors. We need not define such circumstances. In the case at bar we find none. We hold that the government cannot rely upon an

---

case from *Trupiano* in that in *McDonald* the officers lacked the landlord's voluntary consent, the Court did not advert thereto. And see Stoner v. State of California, supra, and Chapman v. United States, supra.

5. The first two matters listed by the Court in Rabinowitz demonstrate the distinction. "(1) [T]he search and seizure were incident to a valid arrest," the arrest itself being predicated upon a warrant. See Wong Sun v. United States, 1963, 371 U.S. 471, 480 n. 8, 83 S.Ct. 407, 9 L.Ed.2d 441. This meant that at least some independent determination of

probable cause had been made by a magistrate. "(2) [T]he place of the search was a business room to which the public, including the officers, was invited." 339 U.S. at 64, 70 S.Ct. at 434.

6. For expressions of similar opinion, see, e.g., Clay v. United States, 5 Cir., 1956, 239 F.2d 196, 204; Smith v. United States, 1958, 103 U.S.App.D.C. 48, 254 F.2d 751, 766–767 (Bazelon, J., dissenting), cert. denied, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552. See also Arwine v. Bannan, 6 Cir., 1965, 346 F.2d 458, 465–467, cert. denied, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123.

expected arrest to seize stolen goods, the presence of which it long had probable cause to know of, simply to avoid the inconvenience of obtaining a search warrant. Cf. United States v. James, 6 Cir., 1967, 378 F.2d 88; United States v. Harris, 6 Cir., 1963, 321 F.2d 739, 741 and cases there collected.

■ We will pick up some loose details. Proceeding without a warrant is not to be justified, as the government suggests here, by the fact that by the time the officers act, dispatch is necessary to avoid flight or injury to person or property. Haste does not become necessary in the present sense if the need for it has been brought about by deliberate and unreasonable delay. This would allow the exception to swallow the principle.

Secondly, we mention, only to discard, speculation in the briefs whether the government was unable to obtain a warrant because Ford was not known to be a reliable informant. Questions as to the reliability of the informer arise only in connection with warrants sought upon hearsay. Cf. Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723. Here Ford's personal affidavit on his own knowledge was readily obtainable. And see fn. 1, supra.

■ We deal with no other point not merely because of the importance, as we view it, of this one, but because the defendants have presented no other matter of any consequence. In our opinion the only error committed at the trial was the refusal to permit defendants access to Ford's grand jury testimony for the purpose of cross-examination. This refusal was not in accord with our view of Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, as we held, subsequent to the instant trial, in Schlinsky v. United States, 1 Cir., 1967, 379 F.2d 735, cert. denied, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265. However, Ford's testimony in chief was of no substantial materiality to any issue in the trial as distinguished from the motion to suppress. We have decided that mo-

tion in defendants' favor. There was, accordingly, no prejudice.

The judgments of conviction are vacated, the jury verdicts set aside, and the orders denying the motions to suppress revoked. The action is remanded to the District Court with instructions to grant the motions to suppress and to take such further proceedings as are consistent with this opinion.