UNITED STATES of America, Appellant,

v.

Dante FERRARA et al.,
Defendants-Appellees.

No. 76–1030.

United States Court of Appeals,
First Circuit.

Argued April 7, 1976.

Decided July 26, 1976.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., and Lawrence P. Cohen, Asst. U. S. Atty., Deputy Chief, Crim. Div., Boston, Mass., were on brief, for appellant.

John Wall, Boston, Mass., Frederick W. Riley, Lynn, Mass., with whom Gargan, Harrington, Markham & Wall, Boston, Mass., Cosmo Taglino, Fogarty & Bongiorno and Robert F. Muse, Lynn, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal by the government from the district court's suppression of evidence seized during a warrantless search of a truck which had been stopped by federal agents as it proceeded along Interstate 195, a principal highway leading from Fall River, Massachusetts to Rhode Island. The evidence seized was to have been presented at the trial of defendants who were indicted under 18 U.S.C. §§ 371, 549, 659, and 2 for conspiracy and receipt of goods stolen while in custom's bond and while part of a foreign and interstate shipment.

The district court's order of suppression was based on its interpretation of our opinion in *Niro v. United States*, 388 F.2d 535 (1st Cir. 1968). The court ruled that the government could not justify the warrantless search on the basis of exigent circumstances because of its "failure to seek a search warrant as soon as practicable" after "the government agents had adopted a course which was clearly going to lead to the eventual search and seizure of [the] vehicle." [1]

We summarize briefly the facts which are essential to an understanding of the legal issues here. In April of 1975 Special Agent Callahan of the Customs Service was investigating a theft, which had occurred the previous month, of 1302 units of stereo sound equipment consigned to the A & A International warehouse in Braintree, Massachusetts, which is a distribution center for the "Radio Shack" chain. On April 29 he had under surveillance a one-story grey wooden building on Ace Street in Fall River. At approximately 4:15 p. m. he observed a U-Haul truck pull up to that building and three men load three cartons into the truck. At about 4:50 p. m. the truck drove from the Ace Street building to the driveway of a private residence on Bullock Street, Fall River. Agent Callahan called for assistance, and both the Ace Street and Bullock Street addresses were placed under surveillance by federal agents for the night. At 7:30 the next morning Agent Callahan and another agent drove from Fall River to Boston to seek search warrants for both the Ace Street building and the U-Haul truck; they arrived at the federal building in Boston at about 9 a. m. The warrants were issued at approximately 1 p. m., but in the meantime federal agents were following the U-Haul through the streets of Fall River, and they eventually stopped and searched it on Interstate 195. It is not clear whether the warrant had in fact been issued in Boston at the time of the search, but in any event when the agents searched the truck they had no knowledge that a warrant had been issued.

Before passing on the difficult question as to whether this case falls within the scope of the *Niro* rule, we must first determine whether or not there was probable

---

1. This language from the district court's "Revised Memorandum and Order on Defendants' Motion to Suppress Evidence" tracks the language of our opinion in *Niro v. United States*, 388 F.2d 535, 539 (1968).

cause to justify the warrantless search of the truck on Interstate 195. *See United States v. Farnkoff*, 535 F.2d 661, at 665, (1st Cir. 1976). For the sake of convenience, we focus on certain of the facts set forth in the affidavit which was submitted to the magistrate in Boston when the agents sought the warrant for the truck. (It is true that the search was conducted without reliance on the warrant, but the affidavit at least reflects the basis for the agents' belief that there was probable cause.) The affidavit which Agent Callahan presented to the magistrate reads in pertinent part:

"On or about April 25, 1975, the manager of the A & A International Warehouse in Braintree showed me certain cartons, in particular, brown cardboard cartons, approximately 26″ long by approximately 20″ high, by 20″ deep, bearing two large capital letter A's over a diamond shape figure on the sides of the carton, with additional lettering included the word 'Braintree' which he stated were nearly identical to those stolen from Black Hawk Transportation Company, Inc., Charlestown, on March 17, 1975.

"On or about April 29, 1975, I was stationed in front of a one-story grey wooden building, with a sign on the south side of the building, 'Cott,' on Ace Street, Fall River, at approximately 4:15 p. m., I observed a Ford van truck, approximately 24′ long, with U-Haul lettered in orange paint on the sides and rear of the truck, bearing Nebraska Commercial Registration No. 151759 back into the rear of the said building toward a garage door and remain at that location for approximately one half an hour. I further observed during this period of time three males each carrying brown cardboard cartons, approximately 26″ long by approximately 20″ high by 20″ deep, bearing two large capital letter 'A's' above a diamond shape figure, with additional marking, including the word 'Braintree.' Each of the males carried the cartons from the grey wooden building to the tailgate of the above-described 'U-Haul' van."

These same facts also constitute the essential basis for the belief of the agents following the truck on Interstate 195 that they had probable cause for a warrantless search. Defendants, however, vigorously maintain that these facts were not adequate as a basis for a finding of probable cause, concluding that "not even the Sheriff of Nottingham himself, had he been standing in Agent Callahan's shoes, would have suspected (much less have had probable cause to believe) that those three shipping cartons he so fleetingly observed contained stolen goods." While we cannot speak for the Sheriff of Nottingham, we believe that the federal agents following the U-Haul truck on Interstate 195 did in fact have probable cause for a warrantless search. We note especially the coincidence in detail between Agent Callahan's description of the cartons which he was shown in the Braintree warehouse and his description of the cartons which he saw the three men carry from the building on Ace Street to the tailgate of the U-Haul truck.

Defendants advance various theories which could possibly support the conclusion that the cartons observed at Ace Street were not from the stolen shipment. We need not discuss these theories in detail, however, because we believe that the coincidence in detail between the cartons observed at the warehouse and those observed at Ace Street constituted "facts and circumstances . . . sufficient in themselves to warrant a man of reasonable caution in the belief that" he was observing criminal activity and the fruits of criminal activity. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See Brinegar v. United States*, 338 U.S. 160, 175–78, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *Cf. Cali v. United States*, 338 F.2d 974, 977 (1st Cir. 1964), *cert. denied*, 380 U.S. 958, 85 S.Ct. 1096, 13 L.Ed.2d 974 (1965) (involving facts remarkably similar to those now before us). Even though the standard for probable cause is higher in the case of a warrantless search than where a warrant has issued, *Rosencranz v. United States*, 356 F.2d 310, 314 (1st Cir. 1966), we hold that in this case that standard was met. It is true that there remained the possibility that the cartons which Agent Callahan observed did

not contain stolen property but perhaps damaged goods legitimately destined for a flea market (as defendants suggest by way of example); but even in criminal trials with their strict evidentiary standards, we have sustained convictions based on reasonable inferences drawn from facts which theoretically could have been interpreted in a manner inconsistent with guilt. *See, e. g., Villarreal Corro v. United States,* 516 F.2d 137, 139 (1st Cir. 1975); *United States v. Farnkoff, supra* at 665.

▮ We must now deal with the basic question on this appeal—whether our decision in *Niro* requires suppression because of the officers' failure to obtain a warrant earlier than they did. We do not believe that suppression is warranted, because this case is unlike *Niro* in one very important particular: the agents involved here were never in a position where they could predict with a reasonable degree of certainty that they would be able to obtain a warrant. By contrast, in *Niro* the investigating officers clearly had probable cause for several hours but failed to take any steps towards obtaining a warrant. Our rather narrow holding in *Niro* was carefully phrased:

> "We think it proper to say that while the failure to obtain a warrant *when one could readily have been had* is not of necessity fatal to a search or seizure concomitant with an arrest the nature of which had been fully anticipated, it will

be fatal unless there are at least some countervailing factors." 388 F.2d at 539 (Emphasis added.)[2]

In the instant case while we have concluded that the agents did in fact have probable cause as early as the evening of April 29, that conclusion was by no means self-evident.[3] They could well have had reason to be uncertain as to whether a warrant would issue, and we cannot say that they were unreasonable in waiting from the evening of the 29th until the morning of the 30th in the hope of increasing the quantum of evidence which they could present to the magistrate. Although in fact no further evidence was obtained, we do not believe that the agents' decision on the evening of April 29 to continue surveillance of the Ace Street and Bullock Street locations was in any sense an attempt to bypass the warrant requirement; rather it was a prudent judgment to wait a reasonable time to see whether the affidavit, which was ultimately presented to a magistrate, could be strengthened by the inclusion of additional "hard" data.[4] At no time before the U-Haul truck was searched on Interstate 195 were the agents in a position where they should have realized that a warrant "could readily have been had," *Niro v. United States, supra,* and we do not believe that in these circumstances the delay in seeking a warrant negates the possibility of there subsequently being exigent circumstances.

**2.** In *Ballou v. Massachusetts,* 403 F.2d 982, 985 (1st Cir. 1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1024, 22 L.Ed.2d 222 (1969), we have characterized *Niro* as involving "a situation where police officers *demonstrably had time to procure a warrant* but failed to do so." (Emphasis added.) In a concurring opinion in *United States v. Church,* 490 F.2d 353, 356 (9th Cir. 1973), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974), Judge Aldrich, the writer of the *Niro* opinion, described it as "a case where the officers, having grounds and opportunity to obtain a search warrant, waited and sought to substitute seeing someone committing a felony on the premises as an excuse for making a warrantless entry."

**3.** While the defendants are of course free to contest before us those aspects of the district court's ruling which were unfavorable to them, we note that their brief and argument were

devoted in large measure to disparaging any finding of probable cause in this case.

**4.** As for the time which elapsed between the federal agents' arrival in Boston from Fall River to seek the warrant (about 9 a. m.) and the actual issuance of the warrant (shortly after 1 p. m.), little need be said. Even though the Assistant U.S. Attorney who was assigned to this case was busy with a trial and another Assistant had to be found to help the agents in preparing the affidavits and search warrant applications and then those documents had to be typed, it does not appear that the agents were acting with maximum efficiency. Nevertheless we do not find in the record any indication that this delay was so "unreasonable and deliberate," *United States v. Curran,* 498 F.2d 30, 34 (9th Cir. 1974) as to vitiate the subsequent assertion of exigent circumstances.

Therefore, when the truck began to accelerate on Interstate 195, the agents properly acted on their belief that there was probable cause.[5] We can apply to the facts of this case the reasoning of a recent concurring opinion of Judge Duniway of the Ninth Circuit:

> "[I]t is at least arguable that the agents had information, before the vehicle started for the border, sufficient to give them probable cause to believe that the defendants intended to export the munitions. If so, they could have obtained a warrant. It does not follow, however, that they were required to do so. It was proper for them to wait until they had more evidence before seeking to search." *United States v. Gonzalez-Rodriguez,* 513 F.2d 928, 931 (9th Cir. 1975).

*See also Cardwell v. Lewis,* 417 U.S. 583, 595–96, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Mark Polus,* 516 F.2d 1290, 1292 n.3 (1st Cir. 1975).

Given our holding that *Niro* does not govern this case, there remains no other obstacle to invoking the so-called "automobile exception" to the normal requirement of a warrant. *See Cardwell v. Lewis, supra; United States v. Farnkoff, supra* at 665–666. The agents who were following the U-Haul truck saw it suddenly accelerate on a high-speed highway in the direction of another jurisdiction located only minutes away; there is no question but that they were faced with exigent circumstances. *See Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

*The district court's order of suppression is vacated, and the case is remanded for further proceedings consistent with this opinion.*

---

**5.** Stated differently, we are holding that at all relevant times after Agent Callahan's observations on April 29 there was probable cause. The agents, however, did not violate the *Niro* rule by delaying a few hours in an attempt to bolster the fairly minimal factual basis for a finding of probable cause. But they also properly relied on that minimal quantum of probable cause when they made their warrantless search of the moving vehicle on Interstate 195.