STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. EDWARD O'HERRON, JR., AND KATHLEEN O'HERRON, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1977—Decided November 4, 1977.

572

Before Judges BISCHOFF, KOLE and GAULKIN.

*Mr. Daniel Louis Grossman,* Deputy Attorney General of New Jersey, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Paul A. Sherman* argued the cause for respondents.

The opinion of the court was delivered by

GAULKIN, J. S. C., Temporarily Assigned. The State appeals, by leave granted, from an order entered prior to trial suppressing two marijuana plants seized without a warrant from the rear yard of defendants' home. Based upon that seizure defendants have been indicted for possession of marijuana. *N. J. S. A.* 24:21-20a(4).

The record before the trial court consisted of a brief account by the State of the circumstances of the seizure, which defendants stipulated they would be unable to dispute. The uncontroverted facts are that on July 20, 1976 the Hazlet Police Department received an anonymous call that marijuana plants were growing in a vegetable garden at 169 8th Street, West Keansburg. Two officers were dispatched to that address, where they saw a garden and determined that it should be further investigated by detectives.

At about 11:15 the next morning Detectives Allen and Mulligan went to the address and observed the garden. From the roadway they were able to see "large green plants growing in the garden." In order to get a closer look Detective Allen went around the back and came through the property behind defendants' house. From that vantage point off defendants' property, the detective observed two plants growing at the rear of the property which, from past experience, he identified as marijuana.

The detectives notified headquarters and additional officers were dispatched to the scene. The officers entered defendants' garden, further examined the plants and gathered them as evidence. The record indicates no attempt made at the time of the seizure to identify the owners or occupants of the premises, or to locate them for interrogation, arrest or otherwise.

In the trial court the State, which had the burden to justify the warrantless seizure (*State v. Allen*, 113 *N. J. Super.* 245 (App. Div. 1970)), advised that it was "relying on the plain view doctrine" as enunciated in *Harris v. United States*, 390 *U. S.* 234, 88 *S. Ct.* 992, 19 *L. Ed.* 2d 1067 (1968). Defendants principally relied on what they urged were limitations on the doctrine set forth in *Coolidge v. New Hampshire*, 403 *U. S.* 443, 91 *S. Ct.* 2022, 29 *L. Ed.* 2d 564 (1971), reh. den. 404 *U. S.* 874, 92 *S. Ct.* 26, 30 *L. Ed.* 2d 120 (1971). Following argument, and principally in reliance upon *Coolidge*, the trial judge suppressed the evidence upon findings that the observing of the plants by the police was not inadvertent and that no exigent circumstances excused the requirement of a warrant to seize.

In this court the State again contends that the seizure was justified under *Harris*, which holds that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." 390 *U. S.* at 236, 88 *S. Ct.* at 993, 19 *L. Ed.* 2d at 1069. Defendants respond, as they did in the trial court, that under *Coolidge* the "plain view" exception requires both "inadvertent" discovery of evidence and "exigent circumstances" to justify a warrantless seizure and that neither appears here. In rebuttal the State contends that those requirements of *Coolidge* represent the views of only a plurality of the United States Supreme Court and are therefore not binding on this court and ought not to be followed. Further, the State argues that inadvertence and

exigent circumstances are both established by the stipulated facts.

Consideration of the scope and application of the "plain view" doctrine here must proceed with the recognition that the term "plain view" is imprecise and has been used to describe a variety of circumstances having quite different legal implications. As Justice Stewart noted in *Coolidge*,

> * * * it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the "plain view" doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal. [403 *U. S.* at 465, 91 *S. Ct.* at 2037, 29 *L. Ed.* 2d at 582]

"Plain view" is sometimes used to describe situations in which items are exposed to public view in a public place or in an otherwise constitutionally unprotected location; their observation and seizure are authorized without a warrant. See, *e. g., State v. McKnight,* 52 *N. J.* 35 (1968). A second application of "plain view" is to situations in which officers have lawfully intruded into a constitutionally protected place where they observe the items in question; such "plain view" observation and subsequent seizure require no warrant, as where the initial lawful intrusion is by consent (*e. g., State v. Braeunig,* 122 *N. J. Super.* 319 (App. Div. 1973); *State v. Mark,* 46 *N. J.* 262 (1966)), to effect an arrest (*e. g., State v. Jordan,* 115 *N. J. Super.* 73 (App. Div. 1971), certif. den. 59 *N. J.* 293 (1971)), or in hot pursuit (*e. g., State v. Canola,* 135 *N. J. Super.* 224 (App. Div. 1975), mod., 73 *N. J.* 206 (1977))).

On the other hand, objects may come into "plain view" only after and as a result of an unlawful intrusion into a constitutionally protected zone; evidence of such observation and any warrantless seizure resulting must be suppressed. See, *e. g., State v. Rice,* 115 *N. J. Super.* 128 (App.

Div. 1971); *State v. Allen, supra; State v. Baker,* 112 *N. J. Super.* 351 (App. Div. 1970); *United States v. Chadwick,* —— *U. S.* ——, 97 *S. Ct.* 2476, 53 *L. Ed.* 2d 538 (1977).

■ Simply describing an object as being in "plain view," then, is not sufficient to justify its warrantless seizure. The common strand in the cases cited is that a warrantless seizure may be made of items in "plain view" in a location where the officer has a right to be; but that the presence of the items cannot alone supply justification for a police officer's presence at that location. As Justice Stewart said in *Coolidge,*

\* \* \* the doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused — and permits the warrantless seizure. [403 *U. S.* at 466, 91 *S. Ct.* at 2038, 29 *L. Ed.* 2d at 583]

■ This case presents yet a different kind of "plain view." Here the marijuana plants were located in defendants' backyard but were observed from adjoining property, and the officers' intrusion onto defendants' property is sought to be justified solely on the basis of the antecedent observation.[1] The State urges in essence that whatever is lawfully observed without a warrant may be seized without a warrant, regardless of its location. We find that position to be without the support of reason or persuasive authority.

■ ■ In the kind of "plain view" situation presented here the observation itself is not in issue, for a mere visual observation without physical intrusion generally does not constitute a "search" within the meaning of the Fourth Amendment. See *State v. Smith,* 37 *N. J.* 481 (1962); *United States v. Lee,* 274 *U. S.* 559, 47 *S. Ct.* 746, 71 *L. Ed.*

---

[1] The State does not suggest that the police entered defendants' property to arrest or interrogate defendants, or for any purpose other than to seize the plants. Compare *State v. Griffin,* 84 *N. J. Super.* 508 (App. Div. 1964); *United States v. Anderson,* 552 *F.* 2d 1296 (8 Cir. 1977).

1202 (1927); *United States v. McMillon*, 350 *F. Supp.* 593 (D.D.C. 1972). But the Fourth Amendment by its terms protects against both "unreasonable searches and seizures"; that protection "is *prima facie* equatable with the obtaining of a valid search warrant and the mere existence of probable cause does not alone confer legality upon a warrantless search." *State v. Hannah*, 125 *N. J. Super.* 290, 294 (App. Div. 1973), certif. den. 64 *N. J.* 499 (1974). A "plain view" observation made, as here, without intrusion can surely furnish probable cause for a seizure. That it does not alone justify a warrantless intrusion to seize was stated with simple clarity by Justice Stewart in *Coolidge*:

> * * * plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.[2] [403 *U. S.* at 468, 91 *S. Ct.* at 2039, 29 *L. Ed.* 2d at 584]

---

[2] Although the State urges that the plurality discussion of "plain view" in *Coolidge* is not binding and ought not be followed, our reading of the separate *Coolidge* opinions satisfies us that their differences are largely with Justice Stewart's requirement of "inadvertent" discovery, which he found necessary to avoid legitimizing an initial intrusion "bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it." 403 *U. S.* at 471, 91 *S. Ct.* at 2040, 29 *L. Ed.* 2d at 586. See *Brown v. State*, 15 *Md. App.* 584, 292 *A.* 2d 762 (Ct. Sp. App. 1972), at n. 39. But where the "plain view" is made without an intrusion at all, it is entirely irrelevant whether the police make their observation inadvertently or intentionally. See *Commonwealth v. Adams*, 234 *Pa. Super.* 475, 341 *A.* 2d 206, 209 (Super. Ct. 1975). It is therefore unnecessary to decide whether we must or should accept the "inadvertence" requirement stated by the *Coolidge* plurality with respect to post-intrusion "plain view" situations. See Note, "The Supreme Court, 1970 Term," 85 *Harv. L. Rev.* 3, 237 (1971). Whatever doubts might exist as to the "inadvertence" requirement of

A number of cases have applied those principles to facts similar to those presented here. In *United States v. Coplen,* 541 *F.* 2d 211 (9 Cir. 1976), *cert.* den. 429 *U. S.* 1073, 97 *S. Ct.* 810, 50 *L. Ed.* 2d 791 (1977), officers made a warrantless seizure from a private airplane after making observations from outside of marijuana debris inside. The court found that the visual observation was not a "search," that the observation did not violate any reasonable expectation of privacy and that the viewing of the debris constituted adequate probable cause for the issuance of a warrant. But the court went on to hold that the warrantless seizure was not justified by that observation alone, and that the warrant requirement would be excused only if "exigent circumstances" existed; analyzing that question, the court found the circumstances, including particularly the mobility of the plane, were in fact "exigent."

In *Fixel v. Wainwright,* 492 *F.* 2d 480 (5 Cir. 1974), officers investigating defendant's suspected drug activities observed that, as persons came and left his home, defendant periodically went into his back yard to a small shaving kit. The officers entered the backyard without a warrant and seized the kit, which was found to contain narcotics. The court suppressed the evidence, holding that although the observation together with the other circumstances constituted adequate probable cause, nevertheless

> It is absolutely clear that [the officer] unlawfully encroached on a protected area when he actually entered the back yard, seized the black shaving kit and searched it. Regardless of how suspicious the agents were that the contraband was located on the premises, this fact alone does not justify a search of petitioner's premises in the absence of a search warrant. [at 483]

*Coolidge,* they do not bring into question what Justice Stewart called "a long line of cases" which "make it clear beyond doubt that the mere fact that the police have legitimately obtained a 'plain view' of a piece of incriminating evidence is not enough to justify a warrantless seizure." 403 *U. S.* at 471, 91 *S. Ct.* at 2041, 29 *L. Ed.* 2d at 586, n. 27.

Similarly, in *United States v. Resnick,* 455 *F.* 2d 1127 (5 Cir. 1972), mod. 459 *F.* 2d 1390 (5 Cir. 1972), officers investigating a silver currency melting scheme made surveillance of a building from a distance of from 75 to 100 feet away, observing the reflection of a furnace. Further observations were made later that day and again the following day, when the officers entered the building and seized evidence without a warrant. The court suppressed the evidence, finding the officers' observations did not justify the warrantless seizure:

> * * * the scope of the Fourth Amendment is not determined by the subjective conclusion of the law enforcement officer. The interposition of magistrate between officer and citizen to see if there really was probable cause was readily available, and no emergency prevented resorting to him for normal judicial process. [455 *F.* 2d at 1132]

In *McDonald v. United States,* 335 *U. S.* 451, 69 *S. Ct.* 191, 93 *L. Ed.* 153 (1948), police officers suspected defendant of engaging in gambling activities and observed him over a period of several months. While outside the rooming house in which he lived they heard the sound of an adding machine, whereupon they entered the building, stood on a chair in a common hallway and looked through a transom, observing defendant engaged in a numbers operation. The police then entered the room without a warrant. The United States Supreme Court ordered the suppression of the evidence thus obtained:

> We cannot be true to that constitutional requirement [of a warrant] and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative. [335 *U. S.* at 456, 69 *S. Ct.* at 193, 93 *L. Ed.* at 158]

In *Pendleton v. Nelson,* 404 *F.* 2d 1074 (9 Cir. 1968), an officer observed marijuana through a garage window and immediately seized it. The Court of Appeals reversed the trial court determination sustaining the search, stating:

The seizure was not incident to Pendleton's arrest earlier that day and was not pursuant to a search warrant. The view of the narcotics through the window may have provided probable cause to obtain a search warrant but, since no exigent circumstances were shown to exist, such view did not authorize a seizure without such a warrant or consent. [at 1077]

A further exemplar is *State v. Davis,* 228 *N. W.* 2d 67 (Iowa Sup. Ct. 1975), where the court reversed the admission into evidence of marijuana seized without a warrant following a viewing into defendant's apartment through a window. Distinguishing the facts from other kinds of "plain view," the court described the case as involving "a 'pre-intrusion' view of material in an area protected by an expectation of privacy from a vantage point where the viewer had a right to be." The court then quickly disposed of the contention that such a view permitted a warrantless seizure:

To argue such a view, in and of itself, allows a warrantless intrusion is to argue probable cause alone is sufficient to allow a warrantless search and seizure. [228 *N. W.* 2d at 72]

The same result was reached in *Brown v. State, supra,* where, in ordering suppression of stolen goods seized without a warrant from defendant's apartment after an observation from a common hallway, the court summarized the different kinds of "plain view" cases in the following language:

The chameleon-like quality of the phrase "plain view" stems from its loose employment to describe these visually similar but legally distinct situations. Although they share the common denominator of a non-searching, sighting of evidence in "open view," the non-intrusion observation needs no further justification for a seizure; the pre-intrusion observation does need some additional legal predicate for the intrusion necessary to effect the seizure; and the post-intrusion — or truly "Plain View" — observation has already validly surmounted the intrusion hurdle. [292 *A.* 2d at 774–775]

See also, *Chapman v. United States,* 365 *U. S.* 610, 81 *S. Ct.* 776, 5 *L. Ed.* 2d 828 (1961); *Jones v. United States,*

357 *U. S.* 493, 78 *S. Ct.* 1253, 2 *L. Ed.* 2d 1514 (1958); *Johnson v. United States,* 333 *U. S.* 10, 68 *S. Ct.* 367, 92 *L. Ed.* 436 (1947); *Taylor v. United States,* 286 *U. S.* 1, 52 *S. Ct.* 446, 76 *L. Ed.* 951 (1931); *Wattenburg v. United States,* 388 *F.* 2d 853 (9 Cir. 1968); *Niro v. United States,* 388 *F.* 2d 535 (1 Cir. 1968); *Barnato v. State,* 88 *Nev.* 508, 501 *P.* 2d 643 (Sup. Ct. 1972); *State v. Brown,* 1 *Or. App.* 322, 461 *P.* 2d 836 (Ct. App. 1969); *cf. Commonwealth v. Adams, supra.*

The State has offered no authority directly in support of its contrary assertion that a pre-intrusion "plain view" observation justifies a warrantless intrusion and seizure. The reliance it places on *Harris v. United States, supra,* is misconceived. In *Harris* the item seized was in "plain view" in defendant's vehicle which the police lawfully entered following its impoundment; in the formulation of *Brown, supra, Harris* is a case in which the observation "has already validly surmounted the intrusion hurdle."

Although not relied upon by the State, we must, however, note *People v. Bradley,* 1 *Cal.* 3d 80, 81 *Cal. Rptr.* 457, 460 *P.* 2d 129 (Sup. Ct. 1969), and *United States v. Wright,* 146 *U. S. App. D. C.* 126, 449 *F.* 2d 1355 (D. C. Cir. 1971), *cert.* den. 405 *U. S.* 947, 92 *S. Ct.* 986, 30 *L. Ed.* 2d 817 (1972), both of which may be read to support the State's contention here. But in addition to the peculiar and perhaps distinguishing facts of those cases, we observe that subsequent California decisions do not appear to give *Bradley,* a 4–3 decision, any broad reading. See *Lorenzana v. Superior Court of Los Angeles Cty.,* 9 *Cal.* 3d 626, 108 *Cal. Rptr.* 585, 511 *P.* 2d 33 (Sup. Ct. 1973); *People v. Sneed,* 32 *Cal. App.* 3d 535, 108 *Cal. Rptr.* 146 (D. Ct. App. 1973). And the holding in *Wright* was over the strenuous dissent of Judges Wright and Bazelon that "no court has ever so held"; it was specifically rejected in *United States v. Pacheco-Ruiz,* 549 *F.* 2d 1204 (9 Cir. 1976). In any event, reading them most favorably to the State, we find both

*Bradley* and *Wright* at variance with the principles and case law we have discussed and therefore unpersuasive.

We hold, then, that a "plain view" observation made without intrusion into a constitutionally protected location does not itself justify a warrantless intrusion and seizure. Here the intrusion was into defendants' backyard, a place which has long been recognized as enjoying constitutional protection at least in the absence of any showing of some invitation or authorized access to the public. See, *e. g., United States v. Molkenbur,* 430 *F.* 2d 563 (8 Cir. 1970), *cert.* den. 400 *U. S.* 952, 91 *S. Ct.* 244, 27 *L. Ed.* 2d 258 (1970); *Hobson v. United States,* 226 *F.* 2d 890 (8 Cir. 1955). The State does not urge, nor does the record suggest, that defendants invited or permitted access to others into their backyard. Compare *People v. Mullins,* 50 *Cal. App.* 3d 61, 123 *Cal. Rptr.* 201 (D. Ct. App. 1975).

The State contends, however, that by permitting visual observation of the marijuana plants from outside the premises defendants implicitly abandoned any reasonable expectation of privacy from physical intrusion; they rely upon *Katz v. United States,* 389 *U. S.* 347, 88 *S. Ct.* 507, 19 *L. Ed.* 2d 576 (1967), which discusses Fourth Amendment protection in terms of "reasonable expectation of privacy." This contention, if adopted, would necessarily overrule the principle summarized in *Coolidge* that "plain view alone is never enough to justify the warrantless seizure of evidence"; for if "reasonable expectation of privacy" dissipates upon "plain view," then every warrantless intrusion following a "plain view" observation is lawful.

The clash between the concepts of "plain view" and "reasonable expectation of privacy" was noted in Comment, "Privacy in Search and Seizure Law," 25 *Hastings L. J.* 575 (1974):

Privacy was to be determined by subjective criteria, but plain view was still couched in terms of abstract criteria, namely, whether the place is open to surveillance by the public. As a result, there arose an inherent inconsistency in their legal definitions, for one could conceivably have a reasonable expectation of privacy yet still be

legally spied upon based on plain view. This meant, in effect, that after the *Katz* decision there was an implicit contradiction between the legal concepts of privacy and plain view. [at 585 and 586]

See also, *State v. Stanton,* 7 *Or. App.* 286, 490 *P.* 2d 1274 (Ct. App. 1971) ; *People v. Sneed, supra.*

The case law has not resolved the inconsistency as the State would have us resolve it. The contrary result has in fact been reached explicitly or implicitly in all the post-*Katz* cases, discussed above, in which a warrantless intrusion was found not justified by a pre-intrusion "plain view" observation. See particularly, *Fixel v. Wainwright* and *Wattenburg v. United States,* both *supra,* both of which involve warrantless intrusions into backyards; and *United States v. Coplen, supra,* where the court specifically found defendant had no reasonable expectation of privacy from visual observation but remained protected from warrantless intrusion in the absence of exigent circumstances. We thus cannot regard the "long line of cases" referred to in *Coolidge* as overruled by the earlier *Katz* holding.

█ The remaining question is whether "exigent circumstances" excuses the obtaining of a warrant here. The seized marijuana was planted and growing when it was observed; there is no suggestion that at any time during the police investigation defendants were at home, or that the police apprehended an imminent harvest of the plants; the police investigation, conducted over a two-day period, disclosed nothing which indicated any special urgency; and indeed the police did not act with any show of urgency up to the time of the seizure. In short, there are no facts whatsoever which would permit a conclusion that the State has sustained its heavy burden of proving exigent circumstances.[3]

---

[3]We note that at the hearing below the Deputy Attorney General did not urge any "exigent circumstances" ; in fact, in response to the court's question, "What are the exigent circumstances here?", she replied, "Your Honor, I would submit that this situation really does not apply to this case. Our case is the easiest case of plain view."

See *State v. Helton*, 146 *N. J. Super.* 98 (App. Div. 1975), aff'd 72 *N. J.* 169 (1977); compare *State v. McNair*, 60 *N. J.* 8 (1972). The State here proffers only that "contraband *per se* creates an exigency"; that contention is directly in conflict with accepted principle. See *Coolidge v. New Hampshire, Chapman v. United States, Johnson v. United States, Fixel v. Wainwright*, all *supra*.

We therefore affirm the order of suppression entered below and remand the matter to the trial court for further proceedings.