**STATE of Maine**

v.

**Ann DUNLAP.**

**STATE of Maine**

v.

**Arvin OKUS.**

**STATE of Maine**

v.

**Anthony OKUS.**

Supreme Judicial Court of Maine.

Dec. 29, 1978.

---

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Margaret J. Kravchuk, Asst. Dist. Attys., Bangor, for plaintiff.

Goldin & Cates by Selig I. Goldin (orally), Gainesville, Fla., Marshall Stern, Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

On August 8, 1977, indictments were returned against Anthony and Arvin Okus in Superior Court in Penobscot County, charging them with unlawful trafficking in scheduled drugs (cocaine), 17–A M.R.S.A. § 1103. On the same date an indictment was handed down in the same Court against Ann Dunlap, making a similar charge against her under 17–A M.R.S.A. § 1103, and also charging her with unlawful possession of the same scheduled drug, 17–A M.R.S.A. § 1107.

The three Defendants seasonably moved to suppress the drugs and other items seized at about the time of their arrest. After these motions were jointly heard, the Superior Court on December 28, 1977, ordered these items suppressed.[1] Pursuant to 15 M.R.S.A. § 2115–A, the State has timely appealed from that order of suppression.

We deny the appeal.

The facts leading to the warrantless search and seizure of the narcotic drugs are not in dispute. On July 18, 1977, a plastic bag containing cocaine was discovered at a Bangor motel in a room registered to Richard Downing. An investigation revealed that Downing was associated with other lodgers at the same motel and at two nearby motels, many of whom had been displaying large amounts of cash. Members of this group had been continuously placing telephone calls to Hartland, Maine; San Diego, California; and Jacksonville, Florida.

On July 19 police discovered that Linda Nichols, a member of the group, was a serious drug offender and that the Hartland, Maine, telephone number was registered to an individual who was a known drug trafficker.

On July 20, the police learned that an "S. Sherman," who was a member of this group, had sent a package through Delta Airlines' package service to San Diego, California. Suspecting that they had uncovered a drug ring, the police notified federal officials in San Diego, who x-rayed the package. The Bangor police were notified that it contained money.

On July 21 Sherman was overheard on a long distance phone conversation to California stating: "The stash is in." Police thereafter followed Sherman to the Bangor Airport at 10:00 P.M. where he inquired whether a parcel had arrived for him. Sherman was informed that, due to the weather, Delta's parcel service had been delayed.

1. In its order the Superior Court declared, *inter alia*:

No authority need be cited for the basic premise that a search conducted without a warrant is presumptively unreasonable. There is no need to discuss in this case the sufficiency of the evidence to support a finding of probable cause. The State has failed to sustain its burden of showing exigent circumstances justifying the search without a warrant. The requirements of the Constitution do not yield to the necessities of law enforcement goals, no matter how desirable. No authority has been cited for the proposition that exigent circumstances exist whenever the magistrate is out to lunch. Since the State has not justified the warrantless examination of the package at the airport, all that followed has been tainted by the illegal search.

On July 22 between 8:30 A.M. and 9:00 A.M. police were informed that Sherman's parcel would be arriving that afternoon at 1:40 P.M. Thereupon police met with an assistant district attorney and spent the morning drawing up an affidavit to support a search warrant. The record discloses no effort by them to contact either of the two District Court judges in Bangor until almost noon. At the lunch hour neither judge could be reached immediately. The local complaint justice had equal authority to issue a search warrant, 15 M.R.S.A. § 55; he was never approached by the police.

By 1:30 P.M., with the Delta flight on its final approach, the police effectively abandoned their attempts to locate one of the two judges and proceeded to the Bangor airport. Intercepting the parcel the police opened it and found a quantity of cocaine. The parcel was resealed and returned to the Delta counter, where it was claimed by one of the Defendants. Driving off with the parcel, the three Defendants were arrested.

█ In considering the State's appeal from the suppression order, we note at the threshold certain basic rules. First, where the Superior Court has entered an order suppressing evidence, we cannot set aside its findings of fact, unless they are clearly erroneous. *State v. Walker*, Me., 341 A.2d 700, 703 (1975). Second, searches conducted without a warrant are *per se* unreasonable, subject only to a few carefully drawn and much guarded exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Third, the burden is on the State, by a preponderance of the evidence, to establish the existence of such an exception. *State v. Heald*, Me., 314 A.2d 820, 829 (1973).

In this case the State does not argue that its airport search of the parcel can be characterized as incident to hot pursuit, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); a consent search, *State v. McLain*, Me., 367 A.2d 213 (1976); or a search incident to arrest, *State v. Babcock*, Me., 361 A.2d 911 (1976). "Exigent circumstances" alone are argued as grounds for an exception to the warrant requirement.

█ Consistent with the limitations set forth in *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), our Court has recognized an exception for exigent circumstances. *State v. Cress*, Me., 344 A.2d 57 (1975); *State v. Walker*, Me., 341 A.2d 700 (1975); *State v. Stone*, Me., 294 A.2d 683 (1972); *State v. Chapman*, Me., 250 A.2d 203 (1969). If probable cause exists, a warrantless search is not unreasonable where

> there are exigent circumstances which demand immediate search and seizure, or both, to prevent likelihood of removal, concealment, destruction or other loss of the articles lawfully subject to seizure provided, of course, that the search and seizure is limited as to method, place and time to be commensurate with such exigency. *State v. Stone, supra*, at 691.

█ A claim of exigent circumstances, however, must be evaluated in terms of the time when the law enforcement authorities first had an opportunity to obtain a search warrant, not merely from the time the emergency arose, and the authorities must come forward with a satisfactory explanation of their failure to obtain a warrant. *United States v. Rosselli*, 506 F.2d 627, 630 (7th Cir. 1974); *Commonwealth v. Forde*, 329 N.E.2d 717, 720 (Mass.1975). In most cases applying the exigent circumstances doctrine the police have neither the time to obtain a warrant nor the opportunity to avoid the ensuing emergency. *United States v. Rosselli, supra; United States v. Rubin*, 474 F.2d 262 (3rd Cir. 1973); *United States ex rel. Cardaio v. Casscles*, 446 F.2d 632 (2d Cir. 1971).

█ It is not incumbent upon the law enforcement authorities to obtain a search warrant as soon as probable cause arises. Such a view was summarily dismissed in *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). *Accord, United States v. Chuke*, 554 F.2d 260 (6th Cir. 1977); *United States v. Mitchell*, 538 F.2d

1230 (5th Cir. 1976). Likewise, where there is a fairly minimal factual basis for probable cause, the police may continue to investigate without first seeking a search warrant. *United States v. Gardner,* 553 F.2d 946 (5th Cir. 1977); *United States v. Ferrara,* 539 F.2d 799 (1st Cir. 1976). Furthermore, we must recognize that an exigency is not diminished because in hindsight it appears that a search warrant could have been obtained. *United States v. Parrott,* 304 F.2d 619 (6th Cir. 1962).

In *Niro v. United States,* 388 F.2d 535, 540 (1st Cir. 1968) the U.S. Court of Appeals for the First Circuit, speaking through Aldrich, C. J., observed:

> Haste does not become necessary in the present sense if the need for it has been brought about by deliberate and unreasonable delay.

In that case there was no effort to obtain a search warrant. Here, of course, there was an attempt, albeit an unsuccessful one. Nevertheless, the observations of that Court are helpful to us in dealing with the case before us. Here there is no suggestion of a deliberate act by the police in the sense that their own conduct prevented the obtaining of an appropriate search warrant. The question is whether the law enforcement authorities acted reasonably, notwithstanding their failure to get the warrant. Unless there are at least some countervailing circumstances, their failure is fatal.

At the hearing on the motion to suppress the only countervailing circumstance which the State urged was the inability to reach either of the two district court judges at mid-day. In effect, the Superior Court did not find it to be reasonable conduct for the law enforcement authorities to attempt to obtain a warrant in such a leisurely fashion.

We can agree with the State that at the time the Delta flight was on its final approach to the airport, and indeed for some time prior thereto, the exigency of the situation demanded that the police seize and search the parcel containing possible contraband before the consignee-member of the group (whose appearance and address were unknown to the police) could claim the parcel and make off with it.

The night before, however, the police knew the consignee of the parcel was informed that the Delta flight would be delayed. At that point the police knew that the parcel would soon be arriving in Bangor, even if they did not know the precise day or hour. Inexplicably, the law enforcement authorities did not even begin to prepare the essential affidavit until the next morning when, after 8:30 A.M., they were informed that the parcel was due to arrive in Bangor at 1:40 P.M. that day.

The State advanced various reasons which, it argued, justified both the delay until the lunch hour in attempting to contact a District Court judge and the failure to approach at any time the local complaint justice.

■ The Superior Court was not obliged, of course, to accept the reasons so advanced. The ultimate question before the Superior Court was not whether the State's representatives subjectively thought they acted reasonably in the light of unfolding events. Rather, the test was an objective one: whether *in fact* the State's representatives did act reasonably. *See State v. Heald,* Me., 314 A.2d 820, 828 (1973).

■ The Superior Court was consistent with the rule of *Niro, supra,* when it ordered the suppression of the challenged items upon the ground that there was no objectively justifiable explanation for the State's failure to obtain a search warrant.

We conclude that his finding was not clearly erroneous.

■ In sum, an exigency that will justify a warrantless search cannot be one which was created by unreasonable delay on the part of the law enforcement authorities.

In each of these three cases the entry will be:

Appeal denied.

Order of suppression affirmed.

ARCHIBALD, J., did not sit.