STATE of Maine

v.

Donald F. SPROUL.

Supreme Judicial Court of Maine.

Argued June 15, 1988.
Decided July 21, 1988.

Charles K. Leadbetter (orally), Eric Wright, Asst. Atty. Gen., Augusta, for the State.

Peter B. Bickerman (orally), Sumner H. Lipman, Lipman & Katz, Augusta, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

A jury in the Superior Court (Knox County) found defendant Donald F. Sproul guilty of two counts of ballot tampering. 21–A M.R.S.A. § 674(2)(B) (Supp.1987).[1] After trial, the presiding justice granted defendant's motion for acquittal on the second of the two counts. Defendant now appeals from the remaining conviction on count one and argues that a number of his motions were improperly denied, that the trial justice improperly changed the venue of the trial, and that the trial justice erred on a number of evidentiary rulings. Pursuant to 15 M.R.S.A. § 2115–A (1980) and M.R.Crim.P. 37B, the State appeals from the order of the trial justice granting the motion for acquittal on the second count. On defendant's appeal we find no error, and we affirm the judgment of conviction on count one. We dismiss the State's appeal on count two, on motion of defendant, because we find that the appeal has not been diligently prosecuted.

## I.

The relevant facts and procedural background may be briefly summarized as follows: In 1986 defendant, a Republican member of the Maine House of Representatives, was a candidate for re-election in the general elections held in November. His opponent was a man he had run against in 1982 and had defeated by a margin of

---

1. The jury acquitted defendant on a third count of ballot tampering.

thirty-seven votes. The trial testimony permitted the jury to conclude that on October 13, 1986, defendant went to the home of Mrs. Anna Ouellette and delivered an absentee ballot. Defendant sat near Mrs. Ouellette while she marked her ballot and offered her his pen. Mrs. Ouellette declined defendant's offer and informed him that she planned to vote Democratic, and she then voted for defendant's opponent. When Mrs. Ouellette asked defendant whether she should seal the absentee ballot envelope, he replied that it would not be necessary since the city clerk was going to open it that very same day.

After defendant left her home with the unsealed envelope, Mrs. Ouellette became concerned that her ballot might be vulnerable to tampering. On October 22, 1986, before the election, she met with an investigator from the Attorney General's Office and informed him that she suspected that defendant had lied to her about the handling of the absentee ballot envelope, because the day that she voted was a state holiday and the city clerk's office was therefore closed. After confirming that: (1) defendant had handled Mrs. Ouellette's ballot; (2) the city clerk's office was closed on October 13, 1986; and (3) defendant had turned in Mrs. Ouellette's absentee ballot on October 14, 1986, the investigator prepared an affidavit and sought and obtained a search warrant to seize Mrs. Ouellette's absentee ballot from the custody of the city clerk. The resulting inspection occurred prior to the election and before the ballot was opened and mixed with other ballots. The inspection revealed that Mrs. Ouellette's ballot had been altered and her vote changed to a vote for defendant. Defendant now appeals from the judgment of conviction.

## II.

■ Initially on appeal, defendant argues that the District Court erred in denying his motion to suppress the absentee ballot, envelope, and application seized from the city clerk's office. Defendant argues that the search warrant in question was not issued upon an adequate showing of probable cause. The State argues in support of the District Court's finding of probable cause, but also argues that the issue is of no consequence because defendant is without standing to challenge the seizure. Defendant baldly asserts his standing to challenge the validity of the search warrant on the basis of his status as a resident, voter, and candidate, but he provides no authority or argument in support of his position.

The focus of judicial inquiry on the issue of standing is whether the movant had a legitimate expectation of privacy in the invaded place or thing. *Rakas v. Illinois*, 439 U.S. 128, 133, 143, 99 S.Ct. 421, 425, 430, 58 L.Ed.2d 387 (1978); *State v. Philbrick*, 436 A.2d 844, 854 (Me.1981); *State v. Sweatt*, 427 A.2d 940, 945 (Me.1981). In determining whether a person has a constitutionally protected expectation of privacy, the Court engages in a two-part inquiry: First, has the individual manifested a subjective expectation of privacy in the object of the challenged search; and second, is society willing to recognize that expectation as reasonable? *Katz v. United States*, 389 U.S. 347, 351, 353, 88 S.Ct. 507, 511, 512, 19 L.Ed.2d 576 (1967); *State v. Bridges*, 513 A.2d 1365, 1367 (Me.1986).

We are unable to detect any manifestation of an expectation of privacy on the part of defendant in this case. He voluntarily participated as a witness in a statutory procedure for absentee voting. The portion of the application and ballot envelope which required his endorsement is declared a public record by statute and is open to inspection by anyone until the close of voting on election day. *See* 21-A M.R. S.A. § 764 (Supp.1987). Moreover, the ballot of the absentee voter is subject to public procedures for counting (21-A M.R.S.A. § 695 (Supp.1987)), challenge (21-A M.R. S.A. § 696 (Supp.1987)), inspection by the candidates (21-A M.R.S.A. § 736 (Supp. 1987)), and recount (21-A M.R.S.A. § 737 (Supp.1987)). In addition, the statute provides that any ballot is available for inspection on request of "the Governor, the Commission on Governmental Ethics and Election Practices, either branch of the Legislature, any legislative committee *or any*

*court of competent jurisdiction."* 21–A M.R.S.A. § 739 (emphasis added). How a witness to an absentee ballot could participate in a process so pervasively subjected to public scrutiny and, yet, manifest an expectation of privacy must remain unanswered. It is sufficient to note that in this case defendant manifested no expectation of privacy, reasonable or otherwise.[2]

### III.

One week before the scheduled trial date, the presiding justice, on his own motion, transferred the trial to Knox County. The order recited that the change of venue was in the interest of sound judicial administration and was based upon a consideration of "the Defendant's position as an elected representative of the City of Augusta and the heavy pretrial publicity this matter has received."[3] The presiding justice acted pursuant to M.R.Crim.P. 21(d) that provided as follows:

> On the court's own motion and without the consent of the parties, the court may, for purposes of sound judicial administration, transfer any proceeding to a location that is both in an adjoining county and in the vicinity of where the offense was committed.

The sole question presented by defendant in this regard is whether the phrase "sound judicial administration" authorizes the Superior Court to transfer a case, without defendant's consent, because of concern for the relative ease in acquiring an unbiased jury. Defendant argues that the power to transfer for the purposes of "sound judicial administration" is limited to transfers that lessen court backlogs or serve geographical considerations.[4] We reject such a restrictive interpretation of Rule 21(d). The phrase "sound judicial administration" broadly addresses a concern for avoiding added needless delay and expense in a trial process that is slow and costly. *See i.e., State v. Placzek,* 380 A.2d 1010, 1013 (Me. 1977); *State v. Caplan,* 353 A.2d 172, 175 n. 5 (Me.1976). The rule commits to the discretion of the presiding justice the task of balancing the competing considerations involved in a change of venue. We review the action of the presiding justice only for an abuse of discretion. *See State v. Dyer,* 371 A.2d 1079, 1083 (Me.1977). Because the presiding justice reasonably assumed that defendant's status as a public official and heavy pretrial publicity would unnecessarily burden the jury selection process in Kennebec County, we are unable to conclude that the justice abused his discretion in determining that the administrative interest in providing a fair and speedy trial was served by the change in venue.

### IV.

Four days prior to trial, defendant moved alternatively to exclude the testimony of an expert witness or for a continuance, claiming that he was prejudiced and surprised by a report of test results that he received from the State sixteen days earlier. The subject report compared the results of testing of ink samples taken from the altered portion of Mrs. Ouellette's ballot and defendant's signature on the ballot envelope. The report concluded that the ink used in both areas was the same. On appeal, defendant challenges the denial of his motion for a continuance. We review the trial justice's denial of defendant's motion for a continuance for an abuse of discretion. *State v. Reed,* 479 A.2d 1291, 1295 (Me.1984); *State v. Holt,* 391 A.2d 822, 824–25 (Me.1978).

---

2. Given our holding on standing, we have no occasion to reach defendant's remaining contentions with regard to his suppression motion.

3. The court subsequently afforded the parties an opportunity to comment upon the change of venue. At that hearing, defendant objected to the change of venue, but expressly waived any objection he might have on the basis that Knox County does not adjoin Kennebec County.

4. Rule 21(d) was promulgated under the authority of 15 M.R.S.A. § 1 (Supp.1987). Defendant points to the Statement of Fact that accompanied the initial draft of the statute as evidence that it was intended to be limited to eliminating county court backlogs. Neither the statute nor the rule contains such a limitation, however, and no such limitation is properly implied. *Stone v. Board of Registration in Medicine,* 503 A.2d 222, 227–28 (Me.1986).

Because defendant had time in which to review the report, full opportunity to voir dire and cross-examine the expert at trial, and admitted that he could prepare an adequate defense by the day of trial, the trial justice committed no abuse of discretion in denying defendant's motion for continuance. *See State v. White*, 460 A.2d 1017, 1021–22 (Me.1983). In addition, the trial justice's statement that a continuance would not be considered, unless defendant found that it was impossible to prepare an adequate defense by the trial date, was not improper. The moving party has the burden to prove that the interests of justice require that a continuance be granted. *See Reed*, 479 A.2d at 1295; *State v. Harding*, 392 A.2d 538, 540 (Me.1978).

## V.

■ As part of its case in chief, the State offered a certificate of defendant's election results for 1982. The results showed that defendant had previously defeated the same opponent only by a narrow margin and that his success was attributable to absentee ballots. Defendant objected to the certificate on the basis of relevance and prejudice. The presiding justice ruled that the evidence was admissible for the purpose of showing motive to commit the crime and overruled defendant's objection. We review the trial justice's admission of the evidence for an abuse of discretion. *State v. Kotsimpulos*, 411 A.2d 79, 81 (Me.1980).

Defendant first argues that the statistics concerning the 1982 absentee ballot results were not relevant to the issue of motive. In essence, M.R.Evid. 401 defines relevant evidence as evidence having a tendency to make the existence of any material fact more or less probable than it would be without the evidence. Furthermore, the concept of relevance is based upon rules of logic or common sense, not of law.

Common sense suggests that one measures relevance in a continuum, and that at some stage evidence becomes so remote that its probative impact upon 'the existence of any fact that is of consequence' is reduced to zero. When the probative impact reaches zero, the evidence is simply not admissible under Rule 402; but prior to that point, the admission of the evidence may be weighed against other factors under Rule 403.

*State v. Johnson*, 472 A.2d 1367, 1371 (Me. 1984) (quoting *Kotsimpulos*, 411 A.2d at 81). Applying these principles to the present case, the relevance of the previous absentee ballot election results is clear. As the trial justice emphasized, the fact that defendant won his past election race against his present opponent by a small number of absentee ballots provides the jury with a rational explanation of a possible motive for tampering with the ballots in the present election.

Defendant next argues that, even if relevant, the election results should have been excluded as unduly prejudicial under M.R. Evid. 403. The pertinent part of Rule 403 provides, in essence, that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Balancing the probative value of the evidence against its potential for unfair prejudice rests in the sound discretion of the presiding justice. M.R. Evid. 403; *State v. Green*, 452 A.2d 974 (Me.1982); *State v. Lagasse*, 410 A.2d 537, 541 (Me.1980). Defendant argues for the first time on appeal that it would have been less prejudicial to admit only the gross results of the vote in 1982 without providing the breakdown between absentee ballots and regular ballots. Such an argument could have appropriately been addressed to the presiding justice, but failing that, it does not rise to the level of obvious error.

## VI.

■ Defendant's remaining contentions on appeal are without merit and require no discussion. Thus, we turn to the State's appeal from the judgment of acquittal on count two. Defendant has moved to dismiss the appeal for lack of diligent prosecution. Defendant points to the undisputed fact that the State, having obtained a twen-

ty-three day extension of time, finally filed its brief approximately ten days after the extended deadline without first seeking any further extension of time from this Court. The statute authorizing appeal by the State provides explicitly that such an appeal "shall be diligently prosecuted." 15 M.R.S. A. § 2115-A(4) (Supp.1987). The rule of procedure implementing the State's right to appeal authorizes the dismissal of an appeal if it is not diligently prosecuted. M.R. Crim.P. 37B(d). Factors, such as the potential for collateral attack, that ordinarily militate against strict enforcement of the time limits for filing an appellant's brief have no application to an appeal by the State. Thus, in the absence of some unusual circumstance, there is no reason for this Court to stay its hand in enforcing the time limits, particularly in the absence of a timely request for further extension of time. *See* Cluchey & Seitzinger, *Maine Criminal Practice*, § 39A.4 at 39A-10 (rev. ed. 1987). We grant defendant's motion and dismiss the State's appeal.

The entry is:

Judgment of conviction affirmed. State's appeal dismissed.

All concurring.