**STATE of Maine**

**v.**

**Steven Howard OKEN.**

Supreme Judicial Court of Maine.

Argued Jan. 16, 1990.
Decided Feb. 9, 1990.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the State.

Richard S. Emerson, Jr. (orally), Childs, Emerson, Rundlett, Fifield, & Childs, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Steven Howard Oken appeals from his conviction for murder,[1] robbery with a firearm,[2] and theft[3] on the grounds that the Superior Court (York County, *Brodrick, J.*) improperly denied a pretrial motion. Oken sought to suppress all evidence seized by the police without either a warrant or probable cause from a motel room in Kittery that Oken had let for the previous night, and all statements Oken made to the police after his arrest. At oral argument, Oken abandoned the contention that his statements to the police were made without a voluntary waiver of his *Miranda* rights, and we do not consider this argument further.

Upon review of the record, we conclude that there were sufficient facts for the motion justice to determine that Oken had abandoned the motel room, and thus did not have a reasonable expectation of privacy to the room or its contents. Accordingly, we affirm the conviction.

## I.

The Defendant, Steven Oken, checked into Room 48 of the Coachman Motor Inn in Kittery (Coachman) at approximately 1:00 p.m. on November 16, stating that he only wanted the room for one night. Oken paid for the room with a credit card, in advance, and received the credit card receipt.

Between 5:24 p.m. and 6:30 p.m. on that same day, Lori Ward, a desk clerk at the Coachman, was shot to death. Soon there-

---

1. 17–A M.R.S.A. § 201(1)(A) (1983).

2. 17–A M.R.S.A. §§ 651(1)(D) (1983) and 1252(4) (1983).

3. 17–A M.R.S.A. §§ 359(1) (1983) and 362(3)(A) (1983).

after the Kittery Police Department, responding to a distress telephone call from the motel, discovered her body in a small room behind the front desk.

Oken drove to Freeport that same day, and checked into the Freeport Inn, which is approximately one hour's drive from the Coachman, at 7:54 p.m. The following morning, November 17, one hour before checkout at the Freeport Inn, Oken paid for an additional night's lodging at the Freeport Inn. Oken never officially checked out of the Coachman.

Returning our attention to the day of the murder, at just after 6:50 p.m. on November 16 the police banged on the doors of every motel room in the Coachman, including Room 48. There was no response at Room 48. The police then began a log, which they kept until 1:00–1:30 a.m. the next morning, of all persons and vehicles entering and exiting the motel. Neither Oken nor his car were seen that evening. While driving around the building at 4:45 a.m. on November 17, the Coachman's manager noticed that Oken's car was not in the lot. The manager testified that to the best of her knowledge there were no restaurants open in the area at that time at which Oken could have been receiving a meal.

At 7:30 a.m. on November 17, the motel manager wanted to have the housekeeper start stripping and cleaning the unoccupied rooms. Based on the facts that Oken had stated he would stay only one night, that Oken had paid in advance, and that Oken's car was gone, the manager testified that she believed Room 48 to be unoccupied on that morning and would have cleaned the room. However, when the police indicated that they would come over to the motel immediately, the manager chose to postpone the clean-up of all of the rooms until the police could perform a sweep-search of the rooms. At 8:00 a.m., the manager gave the police, at their request, a list of the Coachman motel rooms with the occupied rooms designated by a circle so the police could search the unoccupied rooms. The list indicated that Room 48 was unoccupied. The police knocked at and entered every unoccupied room, and one occupied room, until they reached Room 48 at approximately 8:30 a.m. This was before the 11:00 a.m. check-out time at the Coachman. There was no answer at Room 48, so the police unlocked and entered the room.

Room 48 contained a bottle of vodka, a half-gallon of orange juice, glasses, a few small pieces of rope, a pair of socks on the floor, a shirt with blood stains on it, and blood smudges on the wall in the bathroom. There were "no toilet articles, no personal articles, no luggage, or any kind of handbags of any kind" left behind, and the bed had not been turned down.

The manager informed the police that Oken was the last person to occupy Room 48. A computer check indicated that Oken was wanted for two other homicides, and that the car Oken was driving had been stolen the previous day in Maryland. With the manager's consent, the police thoroughly searched Room 48 again at 11:00, after checkout time, on November 17. At approximately 5:10 p.m., November 17, Oken was contacted in Freeport by the police and was persuaded to surrender peacefully. The key to Coachman Room 48 was found in the car that Oken was driving.

Oken was indicted on December 8, 1987. Oken filed a motion to suppress all evidence obtained during the police's warrantless entry into and search of Room 48, and all evidence derived as a direct result therefrom, including the later search of Oken's room at the Freeport Inn, the search of Oken's automobile, all of Oken's statements to the police, and the search of Oken's person. After a hearing, the Superior Court (*Brodrick, J.*) denied Oken's motion to suppress "in all respects." The motion justice determined that at the time of the warrantless search Oken had abandoned Room 48, and therefore had no reasonable expectation of privacy in the room. He also found that there was "nothing to taint the later searches in Freeport" because there was "no illegality in the initial entry" into Room 48.

## II.

The only question before this Court is whether Oken had a constitutionally pro-

tected reasonable expectation of privacy to Room 48. Specifically, we must determine whether there were sufficient facts presented to the motion justice to support his finding that Oken had abandoned Room 48 before 8:20 a.m., November 17, 1987, when the police entered the room without a warrant.

In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court enunciated a two-part inquiry for determining whether a person has a constitutionally protected reasonable expectation of privacy. First, the court must determine whether the individual manifested a subjective expectation of privacy in the object of the challenged search. *Id.* at 351, 353, 88 S.Ct. at 511, 512. Second, the court must decide whether society is willing to recognize that expectation as reasonable. *Id. See also State v. Sproul,* 544 A.2d 743, 745 (Me.1988) (recognizing the *Katz* two-step test). The State does not dispute the point that one may have a reasonable expectation of privacy in one's motel room, *see U.S. v. Winsor,* 846 F.2d 1569, 1572 (9th Cir.1988) (holding that one may legitimately entertain a reasonable expectation of privacy within one's hotel room), but argues that Oken himself was not entitled to this expectation because, as the motion justice determined, Oken had abandoned Room 48 by the time of the search.

In *State v. Philbrick,* 436 A.2d 844 (Me. 1981), we stated that "[w]arrantless searches are *per se* unreasonable, subject to a few specifically established, carefully drawn and much guarded exceptions." *Id.* at 854 (citing *Katz,* 389 U.S. at 357, 88 S.Ct. at 514; *State v. Hassapelis,* 404 A.2d 232, 236 (Me.1979); *State v. Dunlap,* 395 A.2d 821, 824 (Me.1978)). Nevertheless, we acknowledged that property voluntarily abandoned is "exempted" from Fourth Amendment protection. *Id.* (citing *City of St. Paul v. Vaughn,* 306 Minn. 337, 237 N.W.2d 365 (1975); 1 LaFave, *Search and Seizure* § 2.6(b) (1978)). Further, in *Philbrick* we held that "[t]he burden is on the State to prove by the fair preponderance of the evidence underlying facts bringing the case within one of the exceptions." *Id.*

(citing *Dunlap, supra,* at 824; *State v. Heald,* 314 A.2d 820, 829 (Me.1973)).

In *Philbrick,* we also provided a definition of abandonment for purposes of determining whether a reasonable expectation of privacy exists:

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Colbert,* 5th Cir. 474 F.2d 174, 176 (1973). Abandonment in the constitutional sense, *i.e.,* in the law of search and seizure, exists only if the defendant has voluntarily discarded the property, left it behind, or otherwise relinquished his interest therein under circumstances indicative of his foregoing any further reasonable expectation of privacy with regard to it at the time of the search. *Id.,* at 176; *City of St. Paul v. Vaughn, supra,* 237 N.W.2d at 370–71.

*Philbrick,* 436 A.2d at 859.

"Where the Superior Court has entered an order suppressing evidence, we cannot set aside its findings of fact, unless they are clearly erroneous." *State v. Dunlap,* 395 A.2d 821, 824 (Me.1978). At the suppression hearing, the motion justice determined that the State had met its burden and proved that Oken abandoned Room 48 and its contents. The motion justice relied upon the following evidence:

The objective evidence is that no later than five and one-half hours after he checked into the Coachman, he drove to Freeport and checked into the Freeport Inn. He left nothing in Room 48 except a bloody jersey, a half bottle of vodka and some orange juice. He left no luggage. According to the manager and according to common sense, this is consistent with a person who has left and does not intend to return. From the police logs at the scene of the crime, it is clear that defendant did not return to the Coachman prior to approximately 1:30 a.m. on the 17th. From the motel manager's observations, we know defendant

was not at the Coachman at 4:45 a.m. There is no evidence that defendant returned to the Coachman between 1:30 a.m. and 4:45 a.m. The bed in Room 48 was not slept in. Defendant was still in Freeport at 10:00 a.m. on the 17th and was extending his stay.

Recognizing that "[a]bandonment in constitutional law turns on the intent of the room occupant," the justice determined:

Defendant cannot point to a single piece of evidence, other than the routine checkout time of 11:00 a.m. at the Coachman, to support his argument that he was still claiming fourth amendment protection for Room 48 when the police entered that room at 8:30 a.m. A standard 11:00 a.m. checkout time, standing alone, is not enough to create an expectation of privacy. Under fourth amendment analysis, proof of apparent abandonment will salvage an otherwise illegal search. [*United States v.*] *Sledge*, [, 650 F.2d 1075, 1081 (9th Cir.1981)]. In this case the State has gone beyond apparent abandonment and has proven actual abandonment.

There were two pieces of evidence suggesting that Oken might return to the Coachman that the motion justice did not discuss in his decision. First, there was testimony presented at trial that at the time of the initial search of Room 48, Oken still retained the key to the room; second, there was testimony that in addition to the "bloody jersey," the "half bottle of vodka," and the "orange juice," a pair of socks was found in the room.

Despite these two additional pieces of evidence, however, the motion justice's factual finding that Room 48 was abandoned was not "clearly erroneous." We determine that there are sufficient facts in the record to support the conclusion that Oken did not intend to return to the Coachmen. "A person who has voluntarily abandoned property cannot complain of its search and seizure." *Philbrick*, 436 A.2d at 854 (citing *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir.1976). Therefore, we conclude that the justice's refusal to suppress the evidence found in Room 48, and further evidence developed as a result of this initial search and seizure, was proper.

The entry is:

Judgment affirmed.

All concurring.