STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-12-4755

JAN-CUM - 1/16/2013
STATE OF MAINE
Cumberland, SS. Clerk's Office

JAN 11 2013

RECEIVED

STATE OF MAINE

v.                                    ORDER ON MOTION TO SUPPRESS

CORNELL COLLINS

## INTRODUCTION

The State has charged Cornell Collins (Collins) with Unlawful Possession of

Oxycodone, Class C, in violation of 17-A M.R.S.A. § 1107-A(1)(B)(4). Pending is

Collin's motion to suppress evidence arising out of a warrantless search of his rented

motel room in the Freeport Inn Annex in Yarmouth, Maine. Collins contends that the

officers lacked probable cause or exigent circumstances to enter the motel room where he

had an expectation of privacy and thus the officer's entry into his hotel room without a

warrant constituted an illegal search. The State counters that the warrantless entry was

valid because the hotel owned the room and the hotel-invited police in to check on a

guest who was unconscious or unresponsive in the wrong room.

At the hearing on the motion to suppress, the State presented two witnesses,

Officers Michael Pierce and Paul Martin. Collins presented no witnesses. After

considering all of the evidence, this court concludes for the reasons set forth below that

the motion to suppress is granted.

FACTS

At approximately 2:00 p.m. on July 14, 2012, Officer Pierce, a Yarmouth police officer, was dispatched to the Freeport Inn Annex for an unresponsive or unconscious male in a hotel room. While on their (there was a second officer who also responded to the Dispatch call) way to the Annex, the officers were notified by Dispatch that the man was not suppose to be in that room. When Pierce arrived at the Annex, two of the hotel staff were present and the door to Room 221 was open with a man lying on the bed. While the man was still lying on the bed, staff told Officer Pierce that the man was a guest of the hotel who had paid for a room. Subsequently, Pierce learned that hotel staff had mistakenly escorted the man to Room 221, which turned out to be the wrong room. The hotel staff wanted the man out of Room 221 from a housekeeping standpoint. The guest's correct room was Room 222, located across the hall from Room 221. The hotel guest was an African American man.[1]

The hotel staff told Officer Pierce that he could go into Room 221. According to Officer Pierce, he entered Room 221 "to make sure the man was okay and not to investigate." He found the guest sleeping on top of the sheets with his shoes off, a half

---

[1] I mention defendant's race because both officers identified him as "African American." They identified no reasonable articulable suspicion for expanding the investigation of Collins in Room 221. Race never provides a basis for reasonable, articulable suspicion. Many states have appointed commissions and tasks forces to look at racial bias in the criminal justice system. Repeatedly these commissions have reached the same conclusion that racial bias affects our criminal justice system. Bias includes unfounded stereotypes about African Americans, which we must acknowledge exist. One only has to look at the experience of renowned Harvard University Professor Henry Louis Gates, Jr., who was arrested for breaking and entering into his own home. Speaking up against the conscious and *unconscious* bias that impacts our criminal justice system and our society in so many ways is the only way to eradicate it. *See* Barbara Madsen, Chief Justice, Washington State Supreme Court, *Racial Bias in the Criminal Justice System*, 47 Gonz. L. Rev. 243 (2011).

drunk bottle of beer and a lap top computer in the room. The officer woke the guest up within 10 seconds by shaking his foot. Once the man had shaken off the cobwebs, he was fully alert and fine. When the man awoke, he asked Pierce "what was going on?" Pierce responded that he was a Yarmouth police officer and the man was in the wrong hotel room. According to Pierce, the guest responded he "liked the sauce." Officer Pierce drew his "conclusions" from that comment.[2] However, Officer Pierce testified that there were two prongs for police presence at the hotel: the first was to check on a man in Room 221 and to make sure he was okay; the second was to investigate whether he was trespassing. While the man was still lying on the bed in Room 221, Pierce learned the man was okay and he was not trespassing in the hotel.[3]

While still in Room 221 and after learning that Collins was fine and not a trespasser, Pierce asked the hotel guest what he was doing here. Collins responded he was here "on a fishing trip." Pierce did not find this story plausible because the man did not have any fishing gear and he had "no real concrete responses" to Pierce's questions about fishing. When asked at the motion hearing why he asked questions of what the guest was he doing in Maine, Pierce responded that he was "just trying to be decent and establish rapport," and then he said that "I liked to fish, so I was just curious." Thus he was not relying on reasonable articulable suspicion of a crime occurring.

At some point, one hotel staff member told Pierce about the guest's odd behavior of following staff and taking photos with his cell phone and that he had changed rooms.

---

[2] Pierce did not explain what conclusions he drew, and whether those conclusions provided a basis for any suspicions he may have harbored.
[3] It should be noted that Pierce wondered, "whether he could be a trespasser because he was in the wrong room." However, he was in the wrong room because the hotel staff directed him to that room; this undermines any claim that he was a trespasser.

3

Pierce however was not able to remember who, what, where and when he learned certain information. His memory of when he learned what information was very sketchy.

After questioning Collins in Room 221, Officer Pierce escorted Collins into Room 222. Pierce admitted that nothing illegal had occurred at that point but he was continuing his "investigation". He did not articulate what he was investigating. Pierce continued to question the guest and tried to get him to break down his whereabouts day by day. Pierce was suspicious about what the guest was doing in Maine. Pierce did not find Collins credible with regard to his fishing story and he concluded that Collins had no plausible explanation about why he had been in Maine over the last few days. Collins told the officer that he had met some girls staying in Room 101, a different section of the hotel, and had some sexual contact with them, but he didn't know their names or anything else about them. Pierce testified that he thought, "prostitutes and drugs flow together." However, Pierce testified that he is not sure whether this conversation raised suspicions about drugs. He did not articulate reasonable grounds for any suspicions he may have had about drugs or any other crimes.

A few minutes later, Officer Pierce explained to Collins that there were inconsistencies in his story and asked if he could search him. Collins, who was sitting on one of the two beds in Room 222, stood up between the beds, raised his arms up with his back to the Officer. Pierce interpreted this action as consent to search him. Officer Pierce went through Collins pockets and located 3 cell phones, a cell phone charger, a large sum of cash (in the hundreds) and a small glassine bag with 13 pills.

The second officer, Officer Martin, arrived as "Pierce was speaking with an 'African American' man on the bed in Room 221." Martin was not sure whether they

4

were there to rescue someone or deal with a trespassing. He overheard some of the conversation between Pierce and Collins. He spoke with a hotel staff member while in Room 221 and quickly learned that this man was a guest of the hotel and that a staff member of the hotel had mistakenly escorted him into Room 221. He was told that the staff now wanted the guest out of Room 221 from a housekeeping standpoint. Martin also learned at some point that Collins had followed a chambermaid and head of housekeeping, taking photographs of them with his cell phone, and that he had changed his hotel rooms. After speaking with staff in the hotel parking lot and examining the hotel registry card for Collins, Martin returned to the hotel and joined Pierce and Collins in Room 222.

DISCUSSION

There are several search and seizures that occurred in this case, and the court must analyze each separately. There is the entry into Room 221, detention and investigation in Room 221, entry into Room 222, and the detention and search of Collins.

I.     Entry into Room 221

The police first entered Room 221 to investigate a report that there was a man who was unconscious or unresponsive in the wrong room. Pierce testified that there were two reasons for entering Room 221, including checking on the man's welfare and a possible trespass. But within minutes of Pierce entering Room 221, the evidence disclosed that the primary objective of the search was to respond to an apparent unconscious guest that the hotel staff wanted removed from Room 221 so housekeeping could make up the room for rental. Pierce learned while the man was still on the bed in Room 221 that the man was fine and he was a guest who had been escorted into the

5

wrong room by hotel staff, and his proper room was across the hall in Room 222. Pierce had checked on the status of the apparent unconscious man and confirmed he was fine and was not a trespasser.

The Fourth Amendment requires that all searches be reasonable. Reasonableness is measured by examining the totality of the circumstances. "This generally requires a warrant and probable cause, but there are exceptions to that requirement." *State v. Sargent*, 2009 ME 125, ¶ 10, 984 A. 2d 831. This applies to hotel rooms; it is well settled that a person has a reasonable expectation of privacy in his hotel room and a warrant is required unless the search fits within one of the exceptions. *Stoner v. California*, 376 U.S.483, 490, 11 L.Ed. 2d 856, 84 S. Ct. 889 (1964); *United States v. Lyons*, 706 F.2d 321, 325-29 (D.C.Cir. 1983); *United States v. Lomas*, 706 F.2d 886, 893 (9th Cir. 1983), *cert. denied*, 464 U.S. 1047 (1984); *United States v. Irizarry*, 673 F.2d 554, 556 (1st Cir. 1982); *United States v. Hansen*, 652 F.2d 1374, 1383 (10th Cir. 1981).

A warrantless search is *per se* invalid unless it comes within a recognized exception to the warrant requirement. *State v. Fredette*, 411 A.2d 65, 68 (Me. 1979). The Maine Law Court has determined that one such exception is exigent circumstances. Exigency exists when it is reasonably believed that a person is in imminent danger of death or serious bodily injury. *State v. St. Ives*, 2000 ME 97, ¶ 19 n. 8, 751 A. 2d 1018, 1023 n.8 (quotation marks and citations omitted). Exigent circumstances may include a threat to the safety of members of the public. *State v. Bilynsky*, 2007 ME 107, ¶ 26, 932 A. 2d 1169. The U.S. Supreme Court describes this exigency as the "emergency aid doctrine", which permits the police to enter without a warrant when they have an objectively reasonable basis to believe that there may be someone who is injured or in

6

imminent danger of physical harm. *Brigham City v. Stuart*, 57 U.S. 398, 403-404 (2006). The law also recognizes that "a police officer has a 'legitimate role as a public servant to assist those in distress and to maintain and foster public safety.' Local police officers frequently engage in 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *State v. Dube*, 655 A. 2d 338, 340 (Me. 1995) (quoting *State v. Pinkham*, 565 A. 2d 318, 319 (Me. 1989).

When Officer Pierce entered hotel room 221, he entered while engage in the community caretaking function: he was checking on the well being of Collins. However, once the cause of the emergency is established and there are no further exigent circumstances apparent, officials must secure a warrant if they wish to conduct an investigation. *Michigan v. Clifford*, 464 U.S. 287, 293 (1984). Here, the basis for the exigent circumstances evaporated in Room 221 after Officer Pierce checked on Collins' welfare and learned that Collins was a hotel guest who had been escorted into the wrong room as the result of a mistake made by the hotel staff.

2.      Investigation in Room 221

Collins contends that once the officers had no reason to believe that an emergency still existed they had no right to further question or search Collins. The court agrees. There was no further evidence developed as a result of the initial entry into Room 221 that justified expanding the investigation. The officers did not observe anything serious enough to justify detaining him in Room 221 for questioning and to justify the intrusion into Room 222. Yet, Pierce continued to question Collins about where he was from, what

7

was he doing in Maine, questioning him about the validity of his reason (fishing) for being in Maine.

Officer Pierce's entry was legal and he was lawfully in Room 221. However, once Pierce's initial justification for being in Room 221 had ceased further investigation in Room 221 was not proper. *Cf. State v. Dube*, 655 A. 2d at 340-341 (justification had ceased once the custodian had finished his repairs and established there were no children in the apartment.) Further investigation must "be reasonably related in scope to the justification for [its] initiation." *United States v. Brignoni-Ponce*, 422 U.S. 873, 888 (1975)(quoting *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). In *Brignoni-Ponce*, the court said that an officer may question the driver and passengers regarding potential illegal activity (suspected of being illegal aliens), and "the officer may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." *Id.* at 881-82. There was neither consent nor probable cause established in Room 221.

There was no evidence that a crime had occurred or was about to occur. The fact that Collins admitted he liked the "sauce", that Collins' story about being in Maine for fishing did not hold up to Officer Pierce's scrutiny, and that Collins changed rooms or met up with some girls the night before did not give Pierce reasonable articulable suspicion to further detain Collins and examine him about his whereabouts over the last several days or his statement that he was in Maine to fish. There was no evidence developed as a result of the initial entry into Room 221 that justified an expanded search and seizure about what Collins was doing in Maine. Subsequent investigation in Room

8

221 was not based upon reasonable suspicion. Pierce himself admitted that he did not have any suspicion or illegal activity.

The same rational applies to entry into Room 222. If there were no basis to justify and expand the search in Room 221, there was no basis for Pierce accompanying Collins into Room 222. Officer Pierce's warrantless entry into Room 222 is illegal.

The State's argument that Collins consented to the search is rejected. The State bears the burden of proving by a preponderance of the evidence that a valid consent was given. *State v. Fredette*, 411 A. 2d 65, 68 (Me. 1979). *See also State v. Oken*, 569 A.2d 1218, 1220 (Me. 1990). The court finds that in Room 221 there is no objective manifestation of consent by Collins. The police therefore wrongfully entered Room 222. Since Room 222 was Collins' rightful hotel room, he had a reasonable expectation of privacy, and the police did not establish circumstances to justify any of the exceptions to a warrant.[4]

With regard to whether Collins consented to the search of his person while in Room 222, any consent to a search obtained during an invalid seizure is ineffective. *State v. Kremer*, 2000 ME 117, ¶ 7, 759 A. 2d 964, 967. Entering Room 222 was an invalid search and seizure, thus the court does not address whether Collins consented to a search of his person. While an officer may ask a person to explain suspicious circumstances if related to the basis for the initial stop of the defendant, *Kremer, Id.* at ¶ 9, any further detention or search must be based on consent or probable cause. Pierce had neither when he expanded his investigation in Room 221. When a continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal

---

[4] Those exceptions to a warrant include safety concerns or exigent circumstances and reasonable articulable suspicion of illegal activity.

activity justifying an extension of the detention, the continue detention constitutes an illegal seizure.

The entry will be:

Defendant's motion to suppress is GRANTED.

Date: January 11, 2013

_____
Joyce A. Wheeler
Justice, Superior Court