MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 144
Docket:      Pen-18-42
Argued:      September 12, 2018
Decided:     October 23, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## CHRISTOPHER J. MARTIN

ALEXANDER, J.

[¶1]  Christopher J. Martin appeals from a judgment of conviction for operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(B)(1) (2017), entered in the trial court (Penobscot County, *Jordan, J.*) after a jury trial.  Martin contends that the motion court (*A. Murray, J.*) erred by finding that exigent circumstances justified two warrantless blood draws and denying his motion to suppress the evidence of his blood-alcohol level derived from the second blood draw.  We affirm the judgment.

### I.  CASE HISTORY

[¶2]  The following facts are taken from the court's findings on the motion to suppress and are reviewed for clear error.  *State v. Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805.  In the early morning of October 11, 2016, an officer of the Bangor

Police Department initiated a traffic stop after witnessing Martin's vehicle twice fail to stop at flashing red traffic lights. The officer noted that Martin was slurring his speech. When asked if he had been drinking, Martin said that he had consumed only a single drink four to six hours earlier. After he performed poorly on several field sobriety tests, the officer arrested Martin for operating under the influence.

[¶3] At the time of the arrest, Martin was in possession of a large amount of money, which the officer began counting on the hood of the police vehicle in Martin's presence. Martin regularly interrupted the counting process and repeatedly requested that the money be counted again in what the officer believed was an attempt to prolong the time it took to complete the count. Once the money was counted, the officer transported Martin to the Bangor Police Department to conduct a breath test. Review of the record, including a dash camera video, indicates that approximately one hour passed between the initial vehicle stop and Martin's arrival at the police department.

[¶4] Upon arriving at the police department, the officer performed the requisite mouth check and removed Martin's false teeth in preparation for a breath test. The officer then attempted to complete the required fifteen-minute monitoring period to ensure that Martin did not belch, as belching may cause

residual alcohol to be present in the mouth that could affect the results of a breath test. Martin belched during the first monitoring period, requiring the officer to restart the period. Martin belched during a second waiting period and complained of indigestion, although he had not exhibited any signs of digestive upset until that point.

[¶5] After Martin belched again during a third waiting period, the officer decided to take Martin to Eastern Maine Medical Center (EMMC) to perform a blood draw. The officer testified that he informed Martin that "because of [Martin's] indigestion and belching, we'd be completing a blood draw." The officer testified that Martin responded "okay" and was "compliant." The officer knew that a prompt blood draw improved the accuracy of the test results and was important in OUI investigations.

[¶6] At EMMC, the officer gave Martin a consent form and told him that it would have to be signed for the blood draw to be completed. Martin complied with the officer's instructions and signed the form. After the blood draw, Martin was transported to the Penobscot County Jail. Shortly after arriving at the jail, the officer received a call informing him that Martin's blood draw may have been contaminated by the use of an alcohol swab. The officer transported Martin back to EMMC. Martin remained compliant and signed a second consent

4

form before another blood draw was completed. More than two hours had elapsed between the traffic stop and the second blood draw. The officer never sought a search warrant for the purpose of drawing Martin's blood.

[¶7] On October 16, 2016, Martin was charged by complaint with operating under the influence. Martin filed a motion to suppress the evidence from the second blood draw.[1] After a hearing on July 17, 2017, the court (*A. Murray, J.*) denied the motion, concluding that exigent circumstances justified the warrantless blood draw.

[¶8] The matter proceeded to a jury trial on January 17, 2018. Following the jury's guilty verdict, the court (*Jordan, J.*) entered a judgment of conviction and sentenced Martin to a term of ten days in the county jail, $890 in fines and surcharges, and a three-year suspension of his right to operate a motor vehicle, with execution stayed pending appeal.[2] Martin timely appealed. M.R. App. P. 2B(b).

---

[1] At the jury trial that followed the motion court's denial of Martin's motion to suppress, the State introduced as evidence an analysis of the blood sample from the draw that showed Martin's blood-alcohol level measured as .18 grams of alcohol per one hundred milliliters of blood.

[2] The parties stipulated that Martin had a prior OUI conviction.

## II.  LEGAL ANALYSIS

[¶9]  Martin contends that the State failed to prove that exigent circumstances justified the warrantless blood draws.  He cites the United States Supreme Court's holding in *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174 (2016), for the proposition that the evanescent nature of blood alcohol evidence does not, per se, establish exigency and argues that the delay caused by the counting of his money and his belching did not create a true exigency.  Martin further argues that under *Missouri v. McNeely*, 569 U.S. 141, 153-155 (2013), the State's failure to explain why the arresting officer never sought a warrant precludes the application of the exigent circumstances exception.

[¶10]  "When reviewing a trial court's denial of a motion to suppress, we review the findings of fact for clear error and the conclusions of law de novo." *State v. Turner*, 2017 ME 185, ¶ 7, 169 A.3d 931.

[¶11]  Ordinarily, a law enforcement officer must obtain a search warrant before taking a sample of a defendant's blood.  *Schmerber v. California*, 384 U.S. 757, 770 (1966).  A search conducted without a warrant is generally deemed unreasonable unless conducted within a limited number of exceptions, such as when the defendant consents or there are exigent circumstances.  *Katz v. United States*, 389 U.S. 347, 357 (1967); *Schneckloth v. Bustamonte*,

412 U.S. 218, 219 (1973); *State v. Cormier*, 2007 ME 112, ¶¶ 14-15, 928 A.2d 753. Here, the court did not reach the issue of Martin's consent because it found that exigent circumstances justified the warrantless blood draws.

[¶12] "The exigent circumstances justification for warrantless searches applies when there is a compelling need to conduct a search and insufficient time in which to secure a warrant." *State v. Rabon*, 2007 ME 113, ¶ 14, 930 A.2d 268. The State has the burden of proving, by a preponderance of the evidence, that exigent circumstances excusing the warrant requirement existed. *State v. Dunlap*, 395 A.2d 821, 824 (Me. 1978). Exigent circumstances will not extinguish the need for a warrant if they result from unreasonable delay by law enforcement in seeking a warrant, but the presence of exigent circumstances "is not diminished because in hindsight it appears that a search warrant could have been obtained." *Id*. at 824-25.

[¶13] Although the United States Supreme Court has held that the natural metabolization of alcohol does not, per se, create exigent circumstances, it has recognized that there may be instances in which this natural bodily process creates exigent circumstances justifying a blood draw without a warrant. *McNeely*, 569 U.S. at 152-56. We addressed this issue in

*State v. Arndt*, 2016 ME 31, ¶¶ 2-3, 10-11, 133 A.3d 587, holding that exigent circumstances justified a warrantless blood draw when a malfunctioning Intoxilyzer caused further delay after more than one and one-half hours had passed since the initial arrest. We concluded that "it was reasonable for the [arresting officer] to become concerned that further delay would result in the loss of evidence due to the metabolization of the alcohol in [the defendant]'s body." *Id*. ¶ 11.

[¶14] As in *Arndt*, the officer's actions here were reasonable, and the evidence supports the motion court's finding that there were exigent circumstances. We need not speculate whether or how quickly a warrant could have been obtained when there is no evidence to suggest that the officer unreasonably delayed seeking a warrant or that the officer otherwise contributed to the exigency. *See Dunlap*, 395 A.2d at 824-25. It was Martin's inability or unwillingness to take a proper breath test and his earlier interruptions to the counting of his $9,709 in cash that created the exigent circumstances.[3]

---

[3] The motion court found that Martin was in possession of a large amount of money but did not specify the amount. Dash camera footage from the officer's vehicle showed the officer, in Martin's presence, counting cash totaling $9,709. The officer believed, and the motion court accepted, that Martin extended the time it took to count the money by continuously interrupting and repeatedly asking for a recount. The video evidence supports this finding.

8

[¶15]  As the motion court found, with support in the record, the officer was not responsible for the delays in obtaining the blood samples.  The record indicates that when the officer ended his attempts to secure a breath test, approximately one and one-half hours had passed since the initial traffic stop; that length of time and Martin's conduct made it reasonable for the officer to be concerned that further delay would result in the loss of evidence.  The exigency became more acute when, after the passage of even more time, the officer learned that the first blood draw might have been contaminated and that a second draw would be necessary.  Accordingly, we affirm the motion court's finding that exigent circumstances existed that negated the warrant requirement for both blood draws.

The entry is:

Judgment affirmed.

Darrick X. Banda, Esq. (orally), Law Offices of Ronald W. Bourget, Augusta, for appellant Christopher J. Martin

R. Christopher Almy, District Attorney, and Chris Ka Sin Chu, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot Unified Criminal Docket docket number CR-2016-3894
FOR CLERK REFERENCE ONLY